# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 20-6020

_____

In re:  Jay Douglas Buchanan, also known as Jay Buchanan,
also known as Jay D. Buchanan; Lori Ann Buchanan, also known
as Lori A. Buchanan, also known as Lori Buchanan

*Debtor*s

------------------------------

Lund-Ross Constructors, Inc.

*Plaintiff - Appellant*

v.

Jay Douglas Buchanan; Lori Ann Buchanan

*Defendants - Appellees*

_____

Appeal from United States Bankruptcy Court
for the District of Nebraska - Omaha

_____

Submitted:  February 18, 2021
Filed: April 2, 2021

_____

Before NAIL, Chief Judge, SCHERMER and SHODEEN, Bankruptcy Judges.

_____

NAIL, Chief Judge.

Lund-Ross Constructors, Inc. appeals the bankruptcy court's summary judgment in favor of Debtors Jay Douglas Buchanan and Lori Ann Buchanan regarding Lund-Ross's complaint to determine the dischargeability of a debt it alleges Debtors owe.[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). We affirm.

BACKGROUND

Debtors filed a chapter 7 petition. Debtors included "Lund Ross Constructors" on their schedule of creditors holding unsecured claims and described the claim as contingent, unliquidated, disputed, and a "Corporate Debt; Notice Purpose Only. Lawsuit - CI 19-9270 (Douglas County District Court, NE)[.]" Debtors also referenced Lund-Ross on their schedule of codebtors, indicating Signature Electric, LLC ("Signature Electric") was a codebtor on the claim held by "Lund Ross Constructors[.]" In their statement of financial affairs, Debtors disclosed Lund-Ross had a pending state court lawsuit against Debtors and Signature Electric regarding "Contract Disputes[.]"

Lund-Ross timely commenced a nondischargeability action against Debtors under 11 U.S.C. § 523(a)(2)(A). Lund-Ross stated Debtors were the sole owners of Signature Electric, it had hired Signature Electric to do work on various projects for which Lund-Ross was the general contractor, and Signature Electric had employed or subcontracted some of the work or supplies to other entities. Lund-Ross alleged Signature Electric and Debtors had, when requesting payment from Lund-Ross, untruthfully stated, via lien waivers, that all subcontractors engaged by Signature Electric had been "fully satisfied" for materials and labor they had provided, which

_____

[1]Hon. Thomas L. Saladino, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

-2-

resulted in substantial liens being placed on Lund-Ross's various projects.  It wanted the value of those liens, which Lund-Ross had to clear, plus related costs, declared nondischargeable.  Lund-Ross did not reference in its complaint any applicable nonbankruptcy statute or case law that would make Debtors, under the facts presented, personally liable to Lund-Ross.  Debtors timely answered the complaint.

After commencing the nondischargeability adversary proceeding against Debtors, Lund-Ross filed an unsecured proof of claim for $600,043.64 in Debtors' bankruptcy case.  On the claim form, Lund-Ross stated the basis for its claim was: "Claims/liens asserted for amounts unpaid to electrical suppliers[.]"  Lund-Ross attached to its proof of claim an accounting of the claim that was headed "D & J Electric," a business name used by Signature Electric.  Lund-Ross also attached to its proof of claim several lien statements.  All listed either Signature Electric or D & J Electric as the contracting party; none listed Debtors.[2]  All the invoices attached to the lien statements listed either Signature Electric or D & J Electric as the billed party; none listed Debtors.

The chapter 7 trustee objected to Lund-Ross's and several other similarly situated creditors' claims.  He alleged:

> [E]ach of the said Claims is listed in Debtors' Schedules against a corporate or non-consumer debt against Signature Electric, LLC d/b/a D & J Electric and each of the said Claims is property [sic] a claim against Signature Electric, LLC d/b/a D & J Electric.  None of the listed claims includes any evidence of a personal guarantee by Debtors.

_____

[2]In Echo Group, Inc.'s attached mechanic's lien for $31,064.22, Lund-Ross was identified as the general contractor.  We did not see in the lien statement itself a reference to either Signature Electric or D & J Electric.  However, an "Exhibit C" to Echo Group, Inc.'s mechanic's lien identified Signature Electric, dba D & J Electric, as the entity receiving the materials or labor.

-3-

The bankruptcy court held a hearing after one of the affected creditors responded to the trustee's objection.[3] The bankruptcy court sustained the trustee's objection to the responding creditor's claim and entered an oral decision. The bankruptcy court also sustained the trustee's objection to the other claims, including Lund-Ross's, but did not discuss each individually. No appeal was taken.

In the pending adversary proceeding, Lund-Ross and Debtors filed a joint preliminary pre-trial statement. It summarily stated Debtors' "defenses or objections" included Debtors' assertions that: all actions and representations were between Lund-Ross and Signature Electric, not Debtors; the debt alleged by Lund-Ross was owed by Signature Electric, not Debtors; and there was insufficient evidence to support lifting the corporate veil. In their "summary of the uncontroverted facts," the parties stated Lund-Ross had obtained a judgment in state court against Signature Electric for $600,043.64. There is no dispute the state court judgment against Signature Electric was by default.

---

[3]The bankruptcy court received argument, affidavits, and certain documents already in the case file regarding the responding creditor's claim. The responding creditor acknowledged it did not hold a personal guaranty by Debtors, but it contended Debtors became personally responsible for Signature Electric's debt because Debtors failed to abide by certain state laws regarding the operation of a limited liability company. The responding creditor acknowledged a state court action would be needed to establish Debtors' personal liability. The trustee argued, in part, the responding creditor had not timely taken any steps to establish it had a claim against Debtors. The bankruptcy court acknowledged the responding creditor's argument that it may have a claim against Debtors under state law, but sustained the trustee's objection. The bankruptcy court noted Debtors had scheduled the responding creditor's claim as disputed and the responding creditor's proof of claim was supported by invoices directed only to D & J Electric and did not refer to Debtors personally.

Debtors moved for summary judgment in the adversary proceeding. In their supporting brief, Debtors argued the undisputed record shows the debt to Lund-Ross was owed by Signature Electric only and Lund-Ross's representatives were aware of Signature Electric's "financial shortcomings and need for timely payments in order to pay past obligations to suppliers," so there was no intent to deceive Lund-Ross "as to the true state of supplier payments at any time." Debtors also argued there was no reliance by Lund-Ross on the lien waivers because progress payments were made by Lund-Ross prior to its receiving completed lien waivers. As to piercing the corporate veil, Debtors argued they did not divert for personal use the funds Signature Electric received for its work from Lund-Ross and there was no evidence Debtors used Signature Electric as an alter ego to conduct personal business or that the limited liability company was a "mere shell." Debtors referenced the bankruptcy court's earlier order disallowing Lund-Ross's claim, but in their summary judgment argument Debtors did not rely on any preclusive effect the order disallowing Lund-Ross's claim might impose or impart.

Lund-Ross resisted Debtors' summary judgment motion. In its supporting brief, Lund-Ross said it was aware Signature Electric had reached the limits of its bonding capacity, but it said it had no other communications with Signature Electric or Debtors concerning Signature Electric's financial condition prior to Signature Electric's ceasing business. Lund-Ross stated to receive progress payments, Signature Electric had to apply for payment using a particular form, supply supporting documentation, and provide a completed lien waiver for the previous month's progress payment. Lund-Ross admitted it did not hold personal guaranties from Debtors, but alluded to personal "warranties." It argued Signature Electric had, contrary to the lien waivers provided, failed to pay its creditors for six months before Debtors advised Lund-Ross Signature Electric was going out of business. With limited discussion, Lund-Ross argued it did not need to pierce the corporate veil to assert a claim against Debtors but was instead relying on Debtors' alleged false statements in Signature Electric's lien waivers to create Debtors' personal liability.

Lund-Ross cited *GT Contracting Corp. v. Ogden* (*In re Ogden*), Bankr. No. 14-00286-5-DMW, Adv. No. 14-00005-5-DMW, 2015 WL 9412746 (Bankr. E.D.N.C. Dec. 21, 2015), and *RWS Building Co. v. Freeman*, No. 04CA40, 2005 WL 3446320 (Ohio Ct. App. Nov. 23, 2005), for the proposition that a corporation's principal may be personally liable for fraudulent acts. In the nondischargeability action under 11 U.S.C. § 523(a)(4) in *Ogden*, at issue was the preclusive effect of a state court judgment the creditor had obtained earlier against the debtor–a corporation's chief executive officer–regarding the debtor's violation of provisions of the Maryland Construction Trust Statute. In *Freeman*, the Ohio appellate court affirmed the trial court's summary judgment for the plaintiff-general contractor, holding the trial court had correctly held certain defenses of estoppel and waiver raised by the defendant-subcontractor were not applicable. The subcontractor's principal had been held personally liable, along with his company, under Ohio's R.C. § 1701.93. Lund-Ross, just as in its complaint, however, did not identify in its summary judgment brief any nonbankruptcy law applicable to Debtors that would, under the facts presented, render them personally liable to Lund-Ross.

After taking Debtors' summary judgment motion under advisement, the bankruptcy court entered docket text that stated Lund-Ross "has not shown that the debtors owe a debt to Lund-Ross, so the debtors' motion for summary judgment will be granted and the complaint seeking to except the alleged debt from discharge under § 523(a)(2)(A) will be dismissed." In an attendant written order, the bankruptcy court determined the first analysis it needed to perform was whether Debtors owed a valid debt to Lund-Ross. The bankruptcy court stated Lund-Ross had not pled the corporate veil should be pierced and had not otherwise established under applicable nonbankruptcy law how Debtors are personally liable to Lund-Ross.

Lund-Ross timely appealed the bankruptcy court's summary judgment in favor of Debtors and identified five issues,[4] which may be condensed to one: In granting summary judgment for Debtors, did the bankruptcy court err in finding Lund-Ross failed to establish on the record Debtors were personally liable for the debt owed by Signature Electric.

In its opening brief, Lund-Ross states it was asking the bankruptcy court in the adversary proceeding to determine it held a claim against Debtors personally and that

[4]The five issues listed by Lund-Ross were:

1.    Did the Bankruptcy Court err in granting summary judgment to Defendants Jay D. Buchanan and Lori A. Buchanan?

2.    Did the Bankruptcy Court err in determining that Plaintiff's claim was a company [debt] of Signature Electric's and not a personal debt of Defendants?

3.    Did the Bankruptcy Court err in determining that Plaintiff cannot establish on the record presented that Defendants are liable for the debt owed by Signature Electric?

4.    Did the Bankruptcy Court err in determining that Plaintiff has not established that Defendants are liable on an enforceable obligation under applicable law?

5.    Did the Bankruptcy Court err in determining that Plaintiff has not demonstrated how Defendants can be held personally liable for Signature Electric's debts?

the claim was excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).[5]  It indicates it made this forum choice after Debtors' bankruptcy halted its state court action against Debtors personally.[6]  It argues the bankruptcy court erroneously ignored state law, Eighth Circuit precedent, and one of the bankruptcy court's prior decisions in which a corporate officer was held personally liable for fraudulent acts and statements made in furtherance of corporate business.  Lund-Ross further argues the fact that it holds a claim against Signature Electric is not a barrier to its establishing Debtors also owe it a debt.  Lund-Ross states it need not pierce the corporate veil to reach Debtors and cites, for the first time, an earlier decision by the bankruptcy court in *AGP Grain Coop v. White* (*In re White*), 315 B.R. 741 (Bankr. D. Neb. 2004) (Mahoney, C.J.), and an opinion by the Nebraska Court of Appeals in *Huffman v. Poore*, 569 N.W.2d 549, 556-57 (Neb. Ct. App. 1997), for authority that a tort action may be brought in Nebraska directly against a corporate officer or director if the elements of the tort are satisfied.

In their appeal brief, Debtors foremost propound *res judicata* and argue Lund-Ross should have contested the trustee's objection to its claim on the grounds it did not hold a personal claim against Debtors.

In its reply brief, Lund-Ross challenges Debtors' reliance on *res judicata* because its adversary proceeding was commenced before Lund-Ross filed its proof of claim and before the trustee objected to the claim, because 11 U.S.C. § 502(j) allows a claim to be reconsidered at any time, and because Debtors did not raise *res judicata* as an affirmative defense before the bankruptcy court.  Lund-Ross also

---

[5]While Fed. R. Bankr. P. 3007(b) provides an objection to a claim may be included in an adversary proceeding, we note the federal rules of bankruptcy procedure do not contemplate a claim may be filed through an adversary proceeding. *See* Fed. Rs. Bankr. P. 3001(a), 3002, and 5005(a).

[6]Lund-Ross did not seek relief from the automatic stay from the bankruptcy court to continue its state court action against Debtors.

argues the claims objection process did not preclude its nondischargeability action because the claims process only determined Debtors had not personally guaranteed the debt to Lund-Ross and it was not relying on a personal guaranty to establish Debtors' liability.

## STANDARD OF REVIEW

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011) (citing *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010)). We will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party "is entitled to all reasonable inferences–those that can be drawn from the evidence without resort to speculation." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir. 2001) (internal citation and quotation marks omitted); *Ball v. City of Lincoln, Nebraska*, 870 F.3d 722, 727 (8th Cir. 2017) (the plaintiff must substantiate its allegations with sufficient probative evidence that would permit the bankruptcy court to find in its favor without resorting to speculation or conjecture).

## DISCUSSION

Section 523(a) provides certain "debts" are excepted from an individual debtor's discharge. A "debt" is a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Stated another way, a debt is a liability on an obligation to pay money. *County of San Mateo, California v. Peabody Energy Corp.* (*In re Peabody Energy Corp.*), 958 F.3d 717, 724 (8th Cir. 2020) (internal quotation omitted).

Among the debts that may be excepted from discharge in a chapter 7 case are debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A) and § 727(b). While federal bankruptcy law governs whether a particular debt should be excepted from discharge, the existence of the debt itself is determined under nonbankruptcy law. *Grogan v. Garner*, 498 U.S. 279, 283-84 (1991) ("The validity of a creditor's claim is determined by rules of state law.") (cites therein omitted); *Midland Funding, LLC v. Johnson*, 137 S.Ct. 1407, 1411 (2017) (state law usually determines whether a person has a right to payment)[7]*; Kap's Construction v. Cruz-Brewer* (*In re Cruz-Brewer*), 609 B.R. 1, 7 (Bankr. M.D. Pa. 2019) (a nondischargeability action presents two questions: has the creditor pled an enforceable obligation against the debtor under state law and, if so, is that debt nondischargeable).

In this adversary proceeding, the bankruptcy court did not find any *material* facts in dispute regarding the first question before it–whether Lund-Ross is owed a debt by Debtors. Having determined Lund-Ross did not establish a legal basis for a

---

[7]This case differs from *Midland Funding*, in that the issue in this case is not whether a debt owed by Debtors to Lund-Ross is time-barred or otherwise unenforceable. The issue here is whether such a debt exists at all.

recovery against Debtors personally, the bankruptcy court held Debtors were entitled to summary judgment as a matter of law. Affording Lund-Ross all reasonable inferences, we see no error in the bankruptcy court's decision.

While the bankruptcy court acknowledged it had earlier sustained the chapter 7 trustee's objection to Lund-Ross's claim, it did not rely on that prior ruling in its summary judgment decision in Lund-Ross's nondischargeability action.[8] Instead, the bankruptcy court noted Lund-Ross had not pled the corporate veil should be pierced. The bankruptcy court cited a Nebraska decision that states, in a discussion regarding piercing the corporate veil, a member or manager of a limited liability company may be held personally responsible for an obligation of the company "only where the company has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another." *Thomas & Thomas Court Reporters, L.L.C. v. Switzer*, 810 N.W.2d 677, 685 (Neb. 2012). The bankruptcy court distinguished the *Ogden* decision and the *Freeman* opinion that Lund-Ross had cited, noting each "involved state laws [in other jurisdictions] explicitly holding officers and agents of contractors liable for making false statements or violating fiduciary responsibilities." The bankruptcy court then held:

> There is no evidence before this court that [Debtors] have been accused of or held responsible for violating a similar law. . . .
>     . . . .
>     . . . While [Lund-Ross] claims [Debtor Jay Buchanan] knowingly and intentionally made fraudulent

---

[8]The dissent disagrees. To the extent the bankruptcy court may have relied on its earlier decision disallowing Lund-Ross's claim in Debtors' attendant bankruptcy case, we see no abuse in the court's discretion. *Allison v. Centris Fed. Credit Union* (*In re Tri-State Financial, LLC*), 885 F.3d 528, 533 (8th Cir. 2018) (law of the case is a doctrine of discretion; a bankruptcy court's decision whether to apply it is reviewed for an abuse of discretion).

representations that proximately caused it damage, [Lund-Ross] has not demonstrated how [Debtors] can be held personally liable for their business's debts.

*Lund-Ross Constructors, Inc. v. Buchanan* (*In re Buchanan*), Bankr. No. 19-81793-TLS, Adv. No. A20-8002-TLS, slip op. at 7-8 (Bankr. D. Neb. Nov. 12, 2020).

Like the bankruptcy court, we cannot see where in the record Lund-Ross identified for the bankruptcy court the nonbankruptcy law that would make Debtors personally liable to Lund-Ross.[9]  There is no dispute Lund-Ross did not plead the corporate veil should be pierced, and it did not argue the corporate veil should be pierced when contesting Debtors' motion for summary judgment.  Moreover, it did not allege specific facts that demonstrate Debtors used Signature Electric or D & J Electric to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another.  *See Thomas & Thomas Court Reporters, L.L.C.*, 810 N.W.2d at 685.  Further, a close reading of Lund-Ross's adversary complaint and summary judgment brief does not show Lund-Ross identified any state statute or other nonbankruptcy law that would govern Debtors' actions as principals of Signature Electric and create a personal debt to Lund-Ross.  Finally, Lund-Ross offered its reliance on *White* and *Huffman* only on appeal.[10]

---

[9]While disagreeing with our assessment, the dissent does not point to anything in the record that would lead us to believe otherwise.

[10]An appellate court will ordinarily not consider an argument raised for the first time on appeal.  *Orion Financial Corp. of South Dakota v. American Foods Group, Inc.*, 281 F.3d 733, 740 (8th Cir. 2002).  It does so only if the new argument is purely legal and requires no additional factual development or if a manifest injustice would otherwise result.  *Id.*  Lund-Ross has not argued either exception applies, and we cannot say a manifest injustice would result if we do not consider the newly cited case law, where Lund-Ross had the opportunity to raise its legal theory not only during the summary judgment proceeding but also earlier when the trustee objected to its claim.

In short, Lund-Ross's legal theory for the recovery of a debt from Debtors personally and the probative evidence Lund-Ross would offer in support of that theory were absent from the summary judgment record before the bankruptcy court. Accordingly, we agree with the bankruptcy court that Debtors are entitled to summary judgment as a matter of law.

Because Lund-Ross did not first demonstrate for the bankruptcy court how it could establish a personal debt owed by Debtors under nonbankruptcy law, we, like the bankruptcy court, do not reach the issue of whether such a debt would be nondischargeable under § 523(a)(2)(A).

CONCLUSION

Having reviewed the record *de novo*, we agree with the bankruptcy court that Lund-Ross did not allege specific facts and law showing it holds a debt against Debtors personally under nonbankruptcy law. Consequently, we affirm the bankruptcy court's summary judgment in favor of Debtors on Lund-Ross's nondischargeability action.

SHODEEN, Bankruptcy Judge, dissenting.

The majority opinion, affirming the bankruptcy court's order, is premised upon the conclusion that no debt is personally owed by Jay and Lori Buchanan (hereinafter "Buchanans") and that the record does not support any claim that could be enforced against them, warranting judgment as a matter of law in their favor. Under the applicable law, definitions and the record in this appeal I disagree with that conclusion, and respectfully dissent.

The Buchanans' request for summary judgement alleges that the undisputed material evidence establishes that the debt owed to Lund-Ross is a corporate

obligation of Signature Electric, LLC d/b/a D & J Electric (hereinafter "Signature") and that there is no evidence to establish that they are personally liable for Signature's obligations.[11] Relying upon its order sustaining the Chapter 7 Trustee's omnibus objection to Lund-Ross's Proof of Claim No. 9, the bankruptcy court concludes that the requisite debt for purposes of 11 U.S.C. 523(a)(2)(A) does not exist. In its appeal Lund-Ross raises the issue of whether the order entered on the objection to Proof of Claim No. 9 claim is dispositive of the actual fraud claim raised in the adversary proceeding.

On January 16, 2020, Lund-Ross filed an adversary proceeding alleging that the amount of $600,043.64 is non-dischargeable pursuant to 11 U.S.C. 523(a)(2)(A) for actual fraud related to the submission of pay applications. Later, creditors listed in the Buchanans' bankruptcy filing were notified to submit Proofs of Claim by May 11, 2020. That invitation was accepted by Lund-Ross by filing Proof of Claim No. 9 in the amount of $600,043.64. That filing included documentation of the amounts owed to, and liens filed by, Signature's unpaid suppliers, which Lund-Ross indemnified. In an Omnibus Objection to Claims the Chapter 7 Trustee stated that Proof of Claim No. 9 did not "include any evidence of a personal guarantee." Lund-Ross and the Buchanans agree that no personal guarantee exists. Lund-Ross did not file a response to the Trustee's allegation and the bankruptcy court sustained the objection on the stated grounds. In its order granting summary judgment and dismissing the complaint the bankruptcy court concludes that Lund-Ross cannot establish the existence of a debt which is a pre-requisite to its adversary proceeding

---

[11] In its ruling, the bankruptcy court also addresses the theory of piercing the corporate veil as suggested by Buchanan as the only theory under which Lund-Ross could bring an action against them. Why Lund-Ross would be limited to this single legal theory on its contingent claim is not fully explained.

under 11 U.S.C. §523(a)(2)(A) and has not established any facts which could lead to personal liability for Buchanan.[12]

"Claim allowance and debt liability are different concepts." *Bell v. Educ. Credit Mgmt. Corp (In re Bell)*, 236 B.R. 426, 430 (N.D. Ala. 1999). The ruling involving Proof of Claim No. 9 is unrelated to whether a debt exists and does not resolve the question of whether Lund-Ross has an enforceable claim against Buchanan for actual fraud. See *Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc)*,623 B.R. 53, 61 (Bankr. D. Del. 2020); *Stuart Mills Davenport v. Djourabchi,* 316 F. Supp. 3d 58, 66-7 (D.D.C. 2018).

A timely filed proof of claim that contains the requisite information constitutes "prima facie evidence of the validity and amount of [a creditor's] claim" and is deemed allowed unless a party in interest objects. Fed. R. Bank. P. 3001(f); 11 U.S.C. 502. This language contains no reference to debt. "The objective of the claims allowance process is to identify those claims which are enforceable against the bankruptcy estate." *In re Dow Corning Corp*., 270 B.R. 393, 399 (Bankr. E.D. Mich. 2001); see *In re De La Salle*, 2012 Bankr. LEXIS 6124, *9 (Bankr. E.D. Cal. June 15, 2012) ("The Chapter 7 Trustee is the legal representative of the estate and 'only a trustee can pursue a cause of action belonging to the bankruptcy estate,' including the allowance and disallowance of claims."). The lack of a personal guarantee from the Buchanans for Signature's obligation simply means that Proof of Claim No. 9 failed to establish an enforceable claim for the purpose of receiving a pro-rata distribution payment from the bankruptcy estate – nothing more, nothing less.

---

[12]A party is entitled to Summary Judgment where its opponent has failed "to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In such a case, no genuine issue of material fact will be found to exist because "a complete failure of proof concerning an essential element of [that party's] case necessarily renders all other facts immaterial." *Id.* at 323.

Whether personal liability can be imposed on Buchanan under a theory of actual fraud is a separate claim that exists only on behalf of Lund-Ross and must be resolved by adversary proceeding.[13]

Courts may employ a two step analysis to determine the whether a complaint objecting to dischargeability is proper.

> "Debt" is defined in the Code as "liability on a claim," and "claim" is defined in turn as a "right to payment." For purposes of § 523(a)(2)(A), "debt" means liability on "an enforceable obligation." Whether a debt exists is

---

[13]Dischargeability of an underlying debt is a completely separate issue from allowance or disallowance of the claim. *Fla. Dep't of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073, 1090 (11th Cir. 2011); *Zich v. Wheeler Wolf Attys. (In re Zich)*, 291 B.R. 883, 886 (Bankr. M.D. Ga. 2003). The two questions are procedurally distinct as well. "A proceeding on objection to proof of claim under 11 U.S.C. § 502 is a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure; a determination of dischargeability under § 523 is an adversary proceeding under Rule 7001(6), although an objection to claim may be included, too, under Rule 3007(b)." *Holland v. McCartney (In re Holland)*, No. 14-20990, 2015 Bankr. LEXIS 2530, at *5-6 (Bankr. S.D. Ga. July 30, 2015). "The objective of the claims-allowance process is to identify those claims which are enforceable against the bankruptcy estate." *In re Dow Corning Corp.*, 270 at, 399. "Although a creditor whose claim is disallowed may not collect from the bankruptcy estate, 'disallowance of a claim does not necessarily discharge [the underlying] debt' and eliminate the debtor's personal liability outside of bankruptcy." *In re Diaz,* 647 F.3d at 1090; See also *In re Cruz*, 277 B.R. 793, 795 (Bankr. M.D. Ga. 2000); *In re Shelbayah*, 165 B.R. 332, 335 (Bankr. N.D. Ga. 1994) (holding that "the allowance or disallowance of claims is unrelated to the dischargeability of those claims under section 523."); *MMM Healthcare Inc. v. Quesada (In re Quesada)*, Nos. 13-02057 BKT, 13-00174 BKT, 2014 Bankr. LEXIS 1346, at *12 (Bankr. D.P.R. Apr. 1, 2014) (holding that even though Plaintiff did not have a right to payment from the bankruptcy estate with regards to a disallowed claim, it's claim may still qualify as a "debt" that can be excepted from discharge under 11 USC § 523.).

determined by looking to applicable law, frequently state law. Section 523(a)(2)(A)'s use of the term "*any* debt" (emphasis added) indicates that "debt" as used in § 523(a)(2)(A) is not restricted to a debt established under any particular theory of recovery. To establish the validity of the debt under § 523(a)(2)(A), the claimant must establish that the debtor is liable on an enforceable obligation under applicable law, nothing more nor less.

*Lund-Ross Constructors, Inc. v. Buchanan (In re Buchanan)*, Nos. BK19-81793-TLS, A20-8002-TLS, 2020 Bankr. LEXIS 3178, at *10 (Bankr. D. Neb. Nov. 12, 2020) citing *Hatfield v. Thompson (In Re Thompson),* 555 B.R. 1, 9 (B.A.P. 10th Cir. 2016).

Lund-Ross bears the burden to prove by a preponderance of evidence the following five elements:

(1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the misrepresentation.

*Islamov v. Ungar (In re Ungar),* 429 B.R. 668, 672 (B.A.P. 8th Cir. 2010). Elements one through four relate to the enforceability of Lund-Ross's claim under state law. Element five represents the debt resulting from an enforceable claim of actual fraud.

The statutory language at 11 U.S.C. 523(a)(2)(A) has been satisfied in this case under the two-step analysis. A debt exists.[14] Lund-Ross alleges that the Buchanans

---

[14]The bankruptcy schedules identify Lund-Ross as an unsecured creditor that is owed $0.00. Additional details characterize this obligation as "Corporate Debt;

-17-

committed actual fraud to obtain progress payments on behalf of Signature or for Signature's benefit and argues that state law permits personal liability to be imposed under such circumstances.[15]

Under de novo review and for the reasons stated, I would reverse the bankruptcy court's order granting summary judgment and dismissing the adversary proceeding.

---

Notice Purpose Only. Lawsuit - CI 19-9270 (Douglas County District Court, NE)" that is contingent, unliquidated and disputed. This listing, at a minimum, reflects that Buchanans, at least tacitly, acknowledge that a both a debt and claim may exist, and that personal responsibility for payment is denied.

[15]"[Section]101(5)(A) says that a 'claim' is a 'right to payment' 'whether or not such right is . . . fixed, contingent, . . . [or] 'disputed'. *Midland Funding, LLC v. Johnson,* 137 S. Ct. 1407, 1412 (2017).